peril sought to be avoided, was that of drifting, stern foremost, on a rocky point, projecting far into the sea, and far from high-water mark, and where, if the vessel had struck, all on board would probably have been lost—the vessel have gone to pieces, and the cargo have been scattered, if not lost or destroyed; that this peril was averted, and the vessel run on shore, bows on, in a much less dangerous place, near high-water mark, where the lives of all might have been preserved, and where the cargo was saved in the vessel.

On the whole, I am of opinion that the case cannot be distinguished from Columbian Ins. Co. v. Ashby, and therefore decree that the libellant is entitled to a contribution. Decree for libellant.

[NOTE. A decree was passed for $2,500, which was affirmed by the circuit court. Case unreported.]

This case was taken, by appeal, to the supreme court, and was there dismissed for want of jurisdiction. That point was not taken by the learned counsel for the respondent, and they declined to argue it, when invited to do so by the supreme court. Cutler v. Rea, 7 How. [48 U. S.] 729. See Crocker v. Jackson [Case No. 3,398].

The decision was not by a majority of the supreme court. See statement of Wayne. J., in [Cutler v. Rae] 8 How. [49 U. S.] 615, append. McLean, J., in Dihe v. The St. Joseph [Case No. 3,908], says that the decision was by a divided court, and has not been satisfactory to the profession, and was not in accordance with the prior decisions of the supreme court. It is substantially overruled by the late case of Dupont v. Vance, 19 How. [60 U. S.] 162.

## Case No. 11,600.
### In re READ.
[See 5 Fed. 721.]

## Case No. 11,601.
### READ v. BERTRAND.
[4 Wash. C. C. 514.] [1]

Circuit Court, D. Pennsylvania. April Term, 1825.

ASSUMPSIT—COUNTS THEREUNDER—FEDERAL JURISDICTION—CITIZENSHIP.

1. Assumpsit for goods sold and delivered, money had and received, and insimul computassent. Plaintiff employed defendant as his agent to sell a parcel of goods, for a certain commission. He sold a part of them, and received part of the purchase money, which, with the residue of the goods, he confided to a person whom he appointed as his clerk, and who ran off with the money and goods. The plaintiff cannot recover on the first and third counts, as no sale was made of these goods to the defendant, nor was any account settled and a balance struck between the parties. But the plaintiff is entitled to recover, under the second count, the amount of money received by defendant and lost by the perfidy of his own agent.

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

2. What constitutes judicial citizenship, in reference to the jurisdiction of the courts of the United States.

[Explained in Toland v. Sprague, Case No. 14,076.]

Action to recover the balance of an account of sales rendered by the defendant to plaintiff. The case was, the plaintiff, a merchant of New York, entered into a contract with defendant, then residing in Philadelphia, in the year 1818, to furnish him with a large assortment of jewellery, which he was to take from place to place in the United States to sell for the plaintiff, upon a commission of five per cent. on the invoice prices, and one half of what he might sell them for beyond those prices, the same to be in lieu of expenses and all other charges. The defendant, after passing through many of the states with the articles so furnished by the plaintiff, and making sales of part of them, went to New Orleans, where he opened a store for the sale of the goods then on hand, and of other assortments of like goods sent to his store in New Orleans at different times. In 1819 the defendant came to Philadelphia for the purpose of meeting the plaintiff, and of pointing out the kind of goods suitable for the New Orleans market, to be sent him in future; having left a young man, named Flep, in charge of the store and of a sum of money which he had received from the sales of the plaintiff's goods, to be invested by him in a bill, to be remitted to the plaintiff. Whilst the defendant was in Philadelphia, he received a letter from a friend in New Orleans, informing him that Flep had packed up the goods left in his charge, and disappeared with them. He took with him also the money left by the defendant. The plaintiff then entered into an engagement with the defendant, that the latter should go to the Havana and to New Orleans, and elsewhere, in pursuit of Flep; he binding himself not to sue the defendant for four months. The defendant accordingly went to the Havana and to New Orleans in October, 1819, but was unsuccessful in overtaking Flep, or in recovering any part of the property taken away by him. The defendant wrote to the plaintiff from New Orleans, informing him of his ill success, and mentioning that he was there working for his living. He remained in New Orleans till May, 1820, when he came to Philadelphia, and from thence wrote to the plaintiff, informing him of his arrival, and that his object in coming on was to make some settlement with the plaintiff. The plaintiff's agent endeavoured to prevail upon the defendant to go to New York to see the plaintiff, which he declined, observing that he might thereby expose himself to be sued when distant from his friends. He said he had come to Philadelphia on purpose to go to gaol, and to take the benefit of the insolvent law. The defendant presented to the plaintiff's agent an account, in which, amongst other things, he charged his expenses in New Orleans on his